IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITALO GOMEZ,<br><br>    Plaintiff,<br><br>v.<br><br>BAYVIEW LOAN SERVICING, LLC, ET AL.,<br><br>    Defendants. | No. 3:14-cv-04004-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

This case arises from foreclosure proceedings against a property which Plaintiff Italo Gomez previously co-owned. The gravamen of Gomez's Complaint (dkt. 1) is that Defendant Bayview Loan Servicing, LLC ("Bayview") recorded false instruments to dispossess him of his property. In essence, Gomez seeks invalidation of a trustee's sale of his property. Currently pending before this Court is Bayview's motion to dismiss Gomez's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the papers submitted by the parties and the hearing on the motion, the Court GRANTS the motion to dismiss with leave to amend.

**I.  BACKGROUND**[1]

Gomez challenges action taken against property located at 305 Nevada Street in San Francisco, California. Am. Notice of Removal ¶ 1, Ex. A ("Compl.") ¶ 1. In September 2006, Gomez executed a promissory notice and Deed of Trust on the property to secure his obligation

---

[1] In ruling on the motion to dismiss, the Court takes judicial notice of various public certified documents submitted by Bayview to the extent the materials are referenced in the Complaint and are matters of public record not subject to reasonable dispute. Fed. R. Evid. 201; Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

under a $468,000 loan. Id. Ex. 6. The Deed of Trust identified Mortgage Electronic Registration System, Inc. ("MERS") as (1) the nominee for the lender, AEGIS, and (2) the beneficiary under the Deed of Trust. Id.

On July 23, 2009, CR Title Services Inc., acting as the agent for MERS, recorded a Notice of Default. The notice stated that the amount of default was $22,033.12. Opp. (dkt. 17) Ex. 1.

On August 23, 2010, CR Title Services Inc. recorded a Notice of Rescission of Notice of Default[2], stating that MERS withdrew a Declaration of Default and a Demand for Sale which were previously delivered to Gomez and his co-owner. Compl. Ex. 1. Gomez maintains that this instrument "accelerated [his] debt obligation" because it contained language declaring that "all sums secured by [the deed of trust]" are "immediately due and payable." Opp. at 8. Gomez also alleges that this instrument is false because MERS did not deliver the Declaration of Default or the Demand for Sale to him, as stated in the Notice of Rescission of the Notice of Default. Compl. ¶ 25. Gomez adds that "no default, as was defined in the Notice of Default, was present" and therefore Bayview has "no admissible evidence to support [its] false instrument." Id.

Thereafter, the Deed of Trust was assigned several times, the last assignee being Bayview. Id. ¶ 7 and Ex. 2; Mot. (dkt. 6) Ex. A. Gomez alleges that AEGIS ceased to exist before the assignment to Bayview. Compl. ¶ 10. Therefore, Gomez contends that the agency relationship between MERS and AEGIS had terminated, and MERS was "precluded from acting for [AEGIS]" in assigning the Deed of Trust to Bayview. Compl. ¶¶ 10-11.

On May 8, 2012, Seaside Trustee Inc., acting as agent for Bayview, recorded a Notice of Default, stating that the amount of default was $54,793.84. Mot. Ex. B. On August 9, 2012, Bayview recorded a Substitution of Trustee naming Seaside Trustee Inc. as the new trustee. Compl. Ex. 3. Gomez alleges that the substitution of Seaside as trustee was invalid under California law and the terms of the deed of trust because (1) "Bayview knew, or had a duty to know, that it is not a beneficiary" and (2) "Bayview fails to name the principal for whom it purports to execute the Substitution of Trustee." Compl. ¶ 62.

---

[2] Gomez misidentifies this instrument as a "Notice of Default." Compl. ¶ 7. The plain language of the instrument indicates that it is a "Notice of Rescission of Notice of Default." Id. Ex. 1.

2

1    A Notice of Trustee's Sale soon followed. Id. Ex. 4. Id. Ex. 4. On January 6, 2014,
2 Bayview acquired the property for $505,600. Id. Ex. 5.
3    On July 2, 2014, Gomez filed his Complaint in the Superior Court of California for the
4 County of San Francisco and served Bayview on August 4, 2014. Am. Notice of Removal ¶¶ 1–2.
5 Bayview removed the action to this Court on September 3, 2014, invoking jurisdiction under 28
6 U.S.C. § 1331 and 1441, and filed an Amended Notice of Removal on September 16, 2014. Id.
7 Bayview now moves to dismiss Gomez's Complaint in its entirety. See Mot.

## II.  LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such a motion tests the legal sufficiency of the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)(6)). Dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). If a court grants a motion to dismiss, it should grant the plaintiff leave to amend unless it is clear that the claims could not be saved by amendment. Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007).

Claims for fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz, 476 F.3d at 764 (internal quotation marks omitted).

## III.  DISCUSSION

Gomez's Complaint sets forth five causes of action: (1) breach of contract; (2) violation of section 1691(d)(2) of the Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.); (3) violation of

3

the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.); (4) fraud; and (5) cancellation of trustee's deed upon sale. Bayview seeks to dismiss Gomez's five causes of action for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Because the Complaint fails to state a claim, the motion to dismiss is GRANTED with leave to amend.

### A.  First Cause of Action: Breach of Contract

Gomez's first enumerated claim is for breach of contract.[3] A complaint for breach of contract must plead: (1) the existence of a contract, (2) a breach of the contract by defendant, (3) performance or excuse of non-performance on behalf of plaintiff, and (4) damages suffered by plaintiff as a result of defendant's breach. See McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (1989). Gomez fails to plead adequately the elements of breach and damages.

Gomez predicates his breach of contract claim on Bayview's alleged failure to provide notice prior to the acceleration of his debt pursuant to section 22 of the Deed of Trust. Compl. ¶ 38. Gomez alleges that Bayview had a "contractual" obligation to provide thirty days notice prior to the acceleration of his debt and failed to do so. Id. ¶ 39. Section 22 of the Deed of Trust provides that the "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." Id. Ex. 6 ¶ 22. The notice "shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Id. This

---

[3] As a threshold matter, Gomez appears to contend that the contract itself is invalid for failure to satisfy a condition precedent and for lack of consideration because he alleges that the (1) Deed of Trust named AEGIS as "the sole encumbrancer through a first position lien [on the] deed of trust/mortgage" and (2) AEGIS, as the named Lender under the Deed of Trust, did not fund the escrow. Compl. ¶¶ 28–29. First, Gomez argues that because "MERS was not named in [his] instructions to escrow as an encumbrancer," but rather appeared in "the deed of trust as both the beneficiary and nominee of the beneficiary," the "strict condition precedent to closing was not met." Id. ¶ 30. Consequently, "title never passed to any party relying on the note and deed of trust, including Defendants in its capacity as trustee of the deed of trust." Id. Second, because AEGIS did not fund the escrow, it did not provide consideration for the contract because it "was never at risk of loss and had absolutely no stake in the outcome of the transaction." Id. ¶ 31. Instead, Gomez alleges that the loan was "funded by an unknown secondary market provider of lending" who is the "true beneficiary of the obligation." Id. ¶ 33. Because the unknown party "never contracted with [him]," Gomez argues that he "never consented to the terms and conditions that were agreed upon between the [original named] Lender and the unknown 'warehouse' lender." Therefore, Gomez contends that the contract between him and AEGIS is "a lie and a fraud on its face." Id. ¶ 31.

This allegation, based in part on reports of Wall Street's "faulty mortgage securities" practices, attempts to terminate the subject loan by voiding the original Deed of Trust. In his Complaint, Gomez does not specify the support on which he bases his claim, nor does he address the elements of any theory. Nothing in this bare allegation disrupts the Court's determination that Gomez fails to state a claim in his Complaint.

4

implicates Gomez's second breach of contract theory: that Bayview violated his rights under California Civil Code Section 2924. Compl. ¶ 40. Gomez alleges that Bayview "did not strictly comply with [his] contract[ual] rights" and, therefore, was "prohibited from invoking the non-judicial foreclosure statute in California." Id. ¶ 40. Section 2924 requires, among other things, that a notice of default "set[ ] forth the nature of each breach actually known to the beneficiary." Cal. Civ. Code 2924(a)(1). Gomez contends that the Notice of Default does not contain correct statements that are "actually known to the beneficiary." Compl. ¶ 18. Thus, Gomez argues that Bayview has purposefully omitted "factual evidence" to "obviate the intent of the Recording Statute," causing damages to him. Id.

But Gomez fails to plead in his Complaint that Bayview accelerated the debt at all, and provides no legal support for his conclusory assertion in the course of briefing that the Notice of Default is a "self-evident" "acceleration of the debt." See Opp. at 8. Thus, Gomez has not alleged an acceleration to support breach of the Deed of Trust and thus is unable to plead a cause of action for breach of contract.

In any event, another requisite element of a breach of contract claim is also missing. Bayview correctly argues that Gomez fails to adequately plead that any breach, if there was one, proximately caused Gomez's damages because Gomez does not dispute his default on the loan and does not allege an ability to cure his default absent the alleged missing notice. A complaint must allege actual damages that were proximately caused by the defendant's breach. Capell Assocs, Inc. v. Cent. Valley Sec. Co., 260 Cal. App. 2d 773, 779 (1968) ("[C]ompensatory damages cannot be recovered unless there is a causal connection between the act or omission complained of and the injury sustained."). A plaintiff-borrower who alleges only that he has been "harmed as a result of the breach" insufficiently alleges actual damages and therefore fails to state a claim for breach of contract. See Reyes v. Wells Fargo Bank, N.A., 2011 WL 30759, No. 10-01667-JCS, at *4, *16 (N.D. Cal. Jan 3, 2011).

Gomez's Complaint lacks any factual allegations that failure to receive prior notice proximately caused his damages. The Complaint alleges only that Gomez has "lost or risks losing permanently, contract rights in both a deed of trust and a note that would be unlawfully conveyed"

5

1 and that, "as a direct and proximate result of [Bayview's] acts," Gomez's ability to obtain credit has
2 been damaged. But Gomez's "threadbare recital[]" of the causation element provides no facts that
3 plead with particularity a connection between the alleged absent notice and Gomez's default or his
4 inability to cure the same. See Iqbal, 556 U.S. at 663.

### B. Second Cause of Action: Violation of Equal Credit Opportunity Act

Gomez's second cause of action is for violation of section 1691(d)(2) of the Equal Credit Opportunity Act ("ECOA"), which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of the ECOA. Id. § 1691e. Gomez fails to state an ECOA claim because he does not allege a revocation or denial of credit under § 1691(d)(6).

Gomez alleges that Bayview violated the ECOA by "revoking and changing the terms of an existing credit arrangement without cause" and without legal authority. Compl. ¶¶ 46-47. Gomez points to an assignment, a substitution of trustee, and foreclosure notices for support. See id. ¶ 47, Exs. 1–5. But none of these indicates a revocation of or change in credit, which occurs when "a lender . . . annuls, repeals, rescinds or cancels a right to defer payment of a debt." Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1211 (9th Cir. 2013). Gomez also alleges that Bayview and its agents "materially breached the ECOA by failing to give thirty (30) day's notice of an adverse action, as required under the Act." Id. ¶ 48.

Gomez relies on Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204 (9th Cir. 2013) in opposing Bayview's motion to dismiss this claim. In Schlegel, the Ninth Circuit reversed a dismissal of an ECOA claim and held that the facts alleged gave rise to a claim that the bank revoked the plaintiffs' credit for purposes of § 1691(d)(6). Id. at 1211. There, the complaint alleged that the plaintiffs obtained a loan modification as part of their court-ordered bankruptcy proceedings, but the bank later informed plaintiffs that payments made under the modification were in default. Id. at 1206–07. The bank sent several default notices and accelerated the plaintiffs' loan payments. Id. The Ninth Circuit held that the default notices and acceleration were, effectively, a "revocation of [the] credit" that was extended in the loan modification agreement. Id. at 1211.

6

Gomez's reliance on Schlegel is misplaced under the facts of the case at hand. The ECOA defines an "adverse action" as a:

> denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(2). Under the plain terms of the statute, then, an actionable "adverse action" does not include a refusal to extend additional credit where, as here, "the applicant is delinquent or otherwise in default[.]" 15 U.S.C. § 1691(d)(6); Owens v. Bank of America, NA, 2013 WL 5955338, No. 11-4580-YGR, at *3 (N.D. Cal. Nov. 6, 2013) (holding that repudiation of a loan modification did not amount to an adverse action under Schlegel even though the lender accepted some payments); see also 12 C.F.R. § 202.2(c)(2)(ii) (stating that adverse action does not include "[a]ny action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account"). None of Gomez's allegations indicates that Bayview engaged in conduct encompassed by the "adverse action" requirement of his cause of action.

Furthermore, the ECOA defines the term "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Here, Gomez does not allege a modification of debt or allege that he applied to a creditor directly for an extension, renewal, or continuation of credit. Therefore, Gomez has not sufficiently alleged that he is an "applicant" within the plain meaning of the ECOA and cannot invoke the protections of the Act. Cf. Vasquez v. Bank of America, N.A., 2013 WL 6001924, No. 13-02902-JST, at *13 (Nov. 9, 2013) (examining whether plaintiff is a credit "applicant" within the meaning of the ECOA). Accordingly, Gomez fails to state a claim for violation of the ECOA.

### C.     Third Cause of Action: Violation of the Fair Credit Reporting Act

Gomez's third cause of action under the Fair Credit Reporting Act ("FCRA") alleges that Bayview violated the FCRA by failing to provide notice and by failing to conduct a reasonable investigation when he disputed his debts. Compl. ¶¶ 51–57. Bayview moves to dismiss this claim

7

because it argues that Gomez fails to allege that (1) Bayview misreported information to a consumer reporting agency ("CRA") and that (2) a CRA notified Bayview about a disputed item Bayview furnished. Bayview also moves to dismiss this claim on the grounds that Gomez has not alleged facts showing that it has a duty under section 15 U.S.C. § 1681i(a).

### 1.     15 U.S.C. § 1681s-2(b)

First, Gomez argues that he is entitled to maintain a private cause of action against Bayview under 15 U.S.C. § 1681s-2(b), Compl. ¶ 52, which addresses the "Responsibilities of furnishers of information to consumer reporting agencies." Gomez alleges vaguely that Bayview "breached a duty under the statute" by ignoring his "warning about the false information contained in the instrument because [Bayview] received payments from a third party loan servicer to execute this, and tens of thousands exactly like this false instrument." Id. ¶ 55. Gomez also alleges that once he notified Bayview about the false information, Bayview "speciously ignored" its contractual and statutory duties in order to advance its "own economic interests" at Gomez's "peril and expense." Id. Gomez's claim, then, essentially is that he notified Bayview that he disputed Bayview's assessment of Gomez's credit status, and Bayview failed to conduct a reasonable investigation into Gomez's objections.

But this claim does not fit within the statutory scheme. The FCRA imposes duties on both CRAs and "sources that provide credit information to CRAs, called 'furnishers' in the statute." See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1152–54 (9th Cir. 2009). "Lenders" are among the "most common . . . furnishers of information." Id. at 1153 n.7 (quoting H.R. Rep. No. 108-263, at 24 (2003)). The FCRA places upon furnishers a "general duty to 'provide accurate information' to a [CRA]" and "outlines duties imposed on furnishers that are triggered upon 'notice of dispute' from a CRA." Rothman v. U.S. Bank NA, 2014 WL 4966907, No. 13-03381-MMC, at *5 (N.D. Cal. Oct. 3, 2014) (quoting Swisher v. JP Morgan Chase Bank, 2012 WL 6214394, No. 11-5105-TOR, at *6 (E.D. Wash. Dec. 13, 2012)).

Subsection (a) of section 1681s-2 addresses the duty of furnishers of information to provide accurate information, and subpart (8) specifies the duties of a furnisher of information to conduct a reasonable investigation upon being notified of a dispute by a consumer. 15 U.S.C. § 1681s-

2(a)(8)(E). But no private right of action is available for alleged violations of subsection (a). §§ 1681s-2(c)–(d); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002); Gorman, 584 F.3d 1147, 1154 (9th Cir. 2009). Perhaps in recognition of this fact, Gomez brings his claim under subsection (b), which does create a cause of action for a consumer against a furnisher of credit information. Nelson, 282 F.3d at 1058; Gorman, 584 F.3d at 1155.

Subsection (b), however, does not fit the facts that Gomez describes. On its plain terms, that part of the statute describes the duties faced by furnishers of information upon receiving notice from a consumer reporting agency that a consumer disputes the completeness or accuracy of the information that the furnisher provided to the consumer reporting agency. Gorman, 584 F.3d at 1154 ("These duties [under subsection b] arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)."). Thus, to state a claim against a furnisher under the FCRA, a plaintiff must allege facts showing that the furnisher received notice of the dispute at issue from a CRA, rather than from some other source. Rothman, 2014 WL 4966907, at *5 (citing 15 U.S.C. § 1681s-2(b) (setting forth "[d]uties of furnishers or information upon notice of dispute . . . pursuant to section 1681(a)(2)) and 15 U.S.C. § 1681(a)(2)(b) (requiring CRA to "provide to [furnisher] all relevant information regarding the dispute")); Gorman, 584 F.3d at 1154 (holding that a furnisher's duties "arise only after the furnisher receives notice of dispute from a CRA").

Gomez does not allege that he notified a CRA of a dispute, much less that any CRA notified Bayview. See Rothman, 2014 WL 4966907 at *5. On the contrary, the course of events that Gomez describes encompasses only that Gomez "warned" and provided "notice" to Bayview of the false information. Compl. ¶¶ 54-55. However, any alleged notice given by Gomez to Bayview directly (as opposed to notice from a CRA to Bayview) does not trigger any duty owed by Bayview under subsection (b) of the FCRA. See Gorman, 584 F.3d at 1154; 15 U.S.C. § 1681i-(a)(1)(A), (a)(2)B (providing that the duties of a CRA are triggered when "consumer notifies the [CRA] directly"). Accordingly, Gomez fails to allege an actionable claim under 15 U.S.C. § 1681s-2(b).

**2.     15 U.S.C. § 1681i(a)**

Gomez fares no better in his claim under § 1681i(a), which likewise is inapplicable because

9

that provision describes the duties of a <u>consumer reporting agency</u> in the event of a dispute, not the duties of a furnisher of information.  See § 1681i(a) (explaining what the "consumer reporting agency shall" do in the event of a dispute by a consumer); Rothman, 2014 WL 4966907 at *5. Gomez's complaint alleges that under section 1681i(a) of the FCRA, Bayview had a duty to "conduct a reasonable investigation of information on a consumer's credit contract when put on notice by the consumer that false information was being used in recorded instruments."  Compl. ¶ 54.  This is plainly incorrect, as the cited provision places the duty to conduct a reasonable investigation on consumer reporting agencies, not on a lender like Bayview.  Gomez nowhere alleges that Bayview is a consumer reporting agency, and nothing in the Complaint or in the Court's knowledge would be consistent with this characterization.  Rather, this cause of action stems from Bayview's alleged faults as a "furnisher of information," and fails because § 1681i(a) does not impose duties on furnishers of information.  Although a different provision of the FCRA, 15 U.S.C. § 1681s-2(b)(1)(A), (C), requires a furnisher of information to "conduct an investigation" and to "report the results of the investigation to the [CRA]," these duties are only triggered upon a furnisher receiving notice of a dispute from a CRA.  As discussed above, Gomez never alleges that he notified a CRA directly or that Bayview ever received notice of an alleged dispute from any CRA. Accordingly, Gomez fails to state an actionable claim under 15 U.S.C. § 1681i(a).

### D. Fourth Cause of Action: Fraud

The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  Doe v. Gangland Productions, Inc., 730 F.3d 946, 960 (9th Cir. 2013) (citation omitted).  "When alleging fraud in federal court, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Here, the Complaint alleges several misrepresentations by the defendants: that (1) MERS executed an Assignment as nominee-beneficiary under the Deed of Trust at a time when it did not have the authority to execute the Assignment because the original beneficiary, AEGIS, had "ceased to exist," and along with it the agency relationship created in Gomez's deed between AEGIS and

10

MERS, Compl. ¶ 61; (2) the Substitution of Trustee was fraudulent because the document falsely identifies Bayview as the beneficiary,¶ 62; (3) Defendants relied upon the series of allegedly false instruments to qualify a new trustee under Gomez' deed of trust, when the deed states that only the lender may substitute the trustee of the deed, id.

Even if these allegations state plausible acts of fraud, Gomez does not plead reliance with the specificity or plausibility required to survive this motion to dismiss. The Court cannot discern from Gomez's Complaint whether, or how, any alleged misrepresentations caused Gomez to take any action to his detriment. Gomez alleges vaguely that the public at large has been harmed by unreliable record-keeping, such that "[f]uture generations of Californians are at risk of a corrupted title at the hands of Defendants" and that "Plaintiff and all members of the public . . . are at risk and have already relied on the false instruments as being true and correct." Compl. ¶ 65. But Gomez's concerns about orderly public record-keeping state no link between the alleged misrepresentations and any harm that Gomez allegedly suffered in the chain of events underlying this case. Thus, Gomez fails to plead with sufficient particularity any reliance, never mind any proximate causation between that reliance and Gomez's detriment. See Service by Medallion, Inc. v. Clorox Co., 44 Cal. App. 4th 1807, 1818-19 (1996). Accordingly, Gomez fails to meet the heightened pleading standard set out in Rule 9(b) of the Federal Rules of Civil Procedure and thus does not state a cause of action for fraud.

### E. Fifth Cause of Action: Wrongful Foreclosure

Finally, Gomez seeks to set aside the trustee's sale of the property at issue. This relief is unavailable to Gomez because he fails to allege facts showing that the trustee's sale is void or voidable. It appears that Gomez advances some combination of the following arguments to support his claim: that (1) the trustee's sale was void because the underlying Deed of Trust was void at the inception (2) Bayview breached the Deed of Trust; or (3) the Notice of the Sale was defective due to the fraudulent conduct of the foreclosing party.

Under California law, a foreclosure sale may be set aside by bringing a common law action in equity for wrongful foreclosure, "a proper claim for [which] is comprised of the following elements: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of

11

1 real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the
2 sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases
3 where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of
4 the secured indebtedness or was excused from tendering." Rockridge Trust v. Wells Fargo NA,
5 2014 WL 688124, No. 13-01457-JCS, at *18 (N.D. Cal. Feb. 19, 2014); Lona v. Citibank, NA, 202
6 Cal. App. 4th 89, 103 (2011) ("After a nonjudicial foreclosure sale has been completed, the
7 traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale.").

8       Gomez's pleadings fail for multiple reasons. First, Gomez vaguely alleges that Bayview
9 imputed "false information" as "facts" in the Notice of Default, Substitute of Trustee, Assignment of
10 the Deed, and the Trustee's Deed Upon Sale. Compl. ¶ 73. Under California law, a trustee's
11 foreclosure sale under a deed of trust is presumed valid absent "substantial evidence of prejudicial
12 procedural irregularity." See Melendrez v. D & I Investment, Inc., 127 Cal. App. 4th 1238, 1258
13 (2005). The sale at issue here is entitled to the presumption of validity, and it is the burden of the
14 party challenging the trustee's sale to overcome the presumption of the sale's regularity." See id.
15 Gomez has not alleged any facts that plausibly plead that the trustee's sale was unlawful, fraudulent,
16 or willfully oppressive.

17       Moreover, "[a]s a general rule under California law," at least with respect to completed
18 foreclosure sales, "'an action to set aside a trustee's sale for irregularities in sale notice or procedure
19 should be accompanied by an offer to pay the full amount of the debt for which the property was the
20 security.'" Rockridge, 2014 WL 688124 at *19 (quoting Arnolds Mgmt. Corp. v. Eischen, 158 Cal.
21 App. 3d 575, 578 (1984)). There are, however, exceptions to the tender requirement. As relevant
22 here, tender is not required when a plaintiff who seeks to set aside the trustee's sale has a counter-
23 claim or set-off against the beneficiary. See Lona, 202 Cal. App. 4th at 113 (citing Hauger v. Gates,
24 42 Cal. 2d 752, 755 (1954)). "In such cases, it is deemed that the tender and the counter claim offset
25 one another, and if the offset is equal to or greater than the amount due, a tender is not required." Id.

26       Gomez, citing Hauger, maintains that tender is not required for this action because: (1) "the
27 underlying debt is being challenged as a void transaction" and (2) "the trustee sale is void, not
28 voidable, by operation of law." Compl. ¶ 75. However, as discussed previously, the Complaint

12

does not plausibly challenge the validity of the original Deed of Trust. Gomez also fails to explain why the alleged defects in the assignment and foreclosure documents, each recorded after the Deed of Trust, should have the effect of discharging the debt from the original loan the Deed of Trust secured. And, although the Complaint alleged fraudulent activity in the foreclosure process, Gomez has not sufficiently pled facts to show an irregularity that overcomes the statutory presumption. To the extent any of Gomez's claims are intended to allege a counter-claim or offset, the Complaint discloses nothing from which the Court could discern the value of these claims relative to the tender that Gomez was required to offer.

Accordingly, Gomez's claim to set aside the trustee's sale is dismissed with leave to amend because Gomez has failed to demonstrate that the foreclosure sale was procedurally deficient so as to overcome the presumption that it was valid, and failed to disrupt the precondition that Gomez have offered to tender the amount due.

### F.     Leave to Amend

For the reasons stated above, all five of Gomez's causes of action are hereby dismissed for failure to state a claim on which relief can be granted. Gomez is given leave to amend his Complaint. Federal Rule of Civil Procedure 15(a) provides that "leave shall be freely given when justice so requires." "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Properties, Inc. v. Mobile Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). Gomez has not previously amended his Complaint. Although the Court doubts that the reality of the underlying events supports some or all of Gomez's clauses of action for the reasons stated above, the Court is not convinced at this stage that "the [C]omplaint could not be saved by any amendment." See Swartz, 476 F.3d at 760. Accordingly, Gomez is granted leave to amend, and if he chooses to do so, he should set forth specific non-conclusory facts and allege cogent legal theories showing an entitlement to relief in line with these strictures. See Vasquez, 2013 WL 6001924 at *13.

//

**III. CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion to dismiss as to all claims with leave to amend.

**IT IS SO ORDERED.**

Dated: February 4, 2015

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE